STATE OF NORTH CAROLINA v. PETE HAMLIN

No. 7217SC470

(Filed 2 August 1972)

1. **Intoxicating Liquor § 13— possession of bootleg liquor — insufficiency of State's evidence to support verdict of guilty**

    The evidence was insufficient to support a verdict of guilty in a prosecution for possession of a quantity of alcoholic beverage upon which taxes had not been paid where such evidence tended to show only that officers observed defendant making sales of quantities of whiskey from a gallon plastic jug, and officers detected the odor of bootleg liquor.

2. **Criminal Law § 164— review of sufficiency of State's evidence on appeal**

    The sufficiency of the State's evidence could be reviewed on appeal although defendant did not move for nonsuit in the trial court. G.S. 15-173.1.

APPEAL by defendant from *Exum, Judge,* 6 December 1971 Session of Superior Court held in ROCKINGHAM County.

Defendant was charged in a warrant with the possession, on 16 July 1971, of a quantity of alcoholic beverage upon which the taxes imposed by the laws of the United States and the laws of North Carolina had not been paid. G.S. 18-48 (rewritten effective 1 October 1971). Upon conviction in District Court, defendant appealed to the Superior Court where he was tried *de novo,* by a jury, upon the original warrant.

The State's evidence tended to show the following. On 16 July 1971 defendant was under surveillance by law enforcement officers. They observed him selling a clear liquid from a gallon plastic jug. When the officers undertook to surround and apprehend defendant, he ran carrying the gallon plastic jug with him. As defendant ran through the bushes and the woods, he carried the gallon plastic jug upside down, emptying its contents as he ran. The officers were unable to catch him and consequently did not seize the gallon plastic jug or any of its contents. The next day defendant went to the police station to inquire if the officers were looking for him. He was then arrested and the present charges preferred against him.

Deputy sheriff Chaney testified: "Later on I examined the bushes. They were wet and they had the smell of bootleg liquor on them. Nothing else has the smell of bootleg liquor. That is what I am swearing, that it was bootleg liquor. That is when he was pouring the liquor out. Officer Strange and Barker were there when Pete (defendant) left. He ran just a short distance and he was out of sight of us. We tracked him by the way the whiskey was poured out and by the smell of the liquor but that is about as far as we could follow him."

Reserve officer Knight testified: "As to what if anything was coming out of the jug as he ran, well we could smell the odor of bootleg whiskey that is the only way you could track him, I tracked him down through the woods by the odor of the whiskey. I know the difference between store liquor as you refer to it and moonshine. It is easily distinguished. I was not close enough to distinguish the color of the liquid going out of the jar . . . I am positive and satisfied in my own mind this was white non-taxpaid liquor . . . ."

State v. Hamlin

Deputy sheriff Strange testified:

"When they closed in on them they all got close to him and then he started running with the jug, running and pouring it out and he fell and I reached for him and I guess he was running on his knees because I did not get him and all I could see was the liquor going out of the jug and I got his shoes and his hat. I could see the liquor going out. Its color was clear. It had a strong odor of bootleg liquor. I am familiar with the odor of bootleg liquor and what we call store liquor. This was bootleg liquor. I actually saw the liquid going out. The container was a gallon plastic jug. As to whether he had another jug too, that one is the only one that I saw, was the one that he ran with. I followed him about as far as from here to across the street to the jail. As to how he gave me the slip, I was kind of short-winded and he was faster. As to how fast I think he was going, I don't know, about as fast as a reindeer it looked to me, he was traveling pretty fast. As he ran, well he had the jug turned up and the liquor was pouring out as he ran along. He was bare-footed, he ran out of his shoes. He lost his hat too. I did not see him at any time after that, I saw him the next day when he came to the station. He came to know what they were looking for him for. I do not think he claimed his shoes. He did not claim his shoes. He did not claim his hat either."

The jury returned a verdict of guilty and defendant appealed.

*Attorney General Morgan, by Assistant Attorney General Magner, for the State.*

*Gwyn, Gwyn & Morgan, by Melzer A. Morgan, Jr., for the defendant.*

BROCK, Judge.

[1] Defendant assigns as error that the evidence is insufficient to sustain a verdict of guilty.

Upon the authority of *State v. Smith,* 249 N.C. 212, 105 S.E. 2d 622, we agree that the evidence is insufficient to support a verdict of guilty of the offense with which defendant was charged.

**[2]** In this case the defendant offered no evidence, and, although defendant did not move for nonsuit, the sufficiency of the State's evidence may be reviewed upon appeal. G.S. 15-173.1.

The officers observed defendant making sales of quantities of the whiskey from the gallon plastic jug. It seems that under the circumstances they would have been well advised to have charged defendant under G.S. 18-50 (rewritten effective 1 October 1971). In that event, it would have made no difference whether the whiskey was "taxpaid" or "non-taxpaid."

The judgment entered in this case is vacated, the verdict of the jury is set aside, and the

Case dismissed.

Judges MORRIS and HEDRICK concur.